REDACTED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action No. 06- 6 2 |
| ) | |
| ADAM J. LEVINSON, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury for the District of Delaware charges that:

### Introduction

1.      At all times material to this Indictment, CoolerSmart, LLC ("CoolerSmart") was a limited liability company organized under the laws of Delaware, with its principal place of business in New Castle, Delaware. CoolerSmart began Delaware operations in approximately June 1998. In late 2001, CoolerSmart began operations at a second branch located in the Baltimore, Maryland area.

2.      At all times material to this Indictment, eighty percent (80%) of the membership interest in CoolerSmart was owned by WaterWorld Ventures, Inc. ("WaterWorld"), an Illinois corporation with its principal place of business in Oak Brook, Illinois. WaterWorld was a wholly-owned subsidiary of Elkay Manufacturing Company ("Elkay"). Elkay was a privately-held corporation with its principal place of business in Oak Brook, Illinois. The remaining twenty percent (20%) of the membership interest in CoolerSmart was owned by defendant ADAM J. LEVINSON (hereinafter "Defendant" or "LEVINSON").

3. At all times material to this Indictment and from April 1998 until on or about August 27, 2002, LEVINSON was the Manager of CoolerSmart. As such, LEVINSON was responsible for CoolerSmart's day-to-day operations.

4. At all times material to this Indictment, CoolerSmart was principally engaged in the business of providing point-of-use water coolers to customers on a rental basis. A point-of-use water cooler is a water dispenser connected to the existing plumbing of a business or residence which provides filtered drinking water on demand.

### The Scheme and Artifice to Defraud

5. From in or about June 2000 to in or about August 2002, in New Castle County, in the State and District of Delaware, LEVINSON devised a scheme and artifice to defraud Elkay and WaterWorld.

6. As part of the scheme and artifice to defraud, LEVINSON knowingly provided materially false and misleading information about CoolerSmart's operations to Elkay's management team and Board of Directors, for the purpose of obtaining additional funding for CoolerSmart's operations through Elkay's wholly owned subsidiary, WaterWorld.

7. It was part of the scheme and artifice to defraud that LEVINSON knowingly and willfully provided materially false and misleading information about CoolerSmart's business operations as follows:

a) From at least June 2000 through June 2002, LEVINSON sent or caused to be sent monthly financial reports to Elkay by e-mail and otherwise that (1) falsely reported that more coolers were placed with customers than actually had been placed; (2) misrepresented and overstated the amount of revenue received by CoolerSmart; (3) misrepresented the number of customers who prematurely stopped rental payments on their coolers, i.e., the "quit rate;" (4)

misrepresented various other CoolerSmart financial information; and (5) misrepresented and implied that all of the expenses incurred by CoolerSmart were for legitimate business purposes rather than for the defendant's personal benefit.

b) From at least June 2000 through August 2002, LEVINSON also knowingly provided materially false and misleading information regarding CoolerSmart's business operations to Elkay representatives personally or through subordinates on his management team via telephone calls, e-mails, and face-to-face meetings at CoolerSmart's offices in New Castle, Delaware and various other venues throughout Delaware and Illinois.

8. It was further part of the scheme and artifice to defraud that LEVINSON provided this materially false and misleading information about CoolerSmart's business operations either directly to Elkay's Board of Directors or through others, including Elkay's management team, intending that it would be provided to Elkay's Board of Directors.

9. It was further part of the scheme and artifice to defraud that LEVINSON provided this materially false information for the purpose of misleading the members of Elkay's management team and Board of Directors about CoolerSmart's true operating condition, with the intention that Elkay's management team and Board of Directors would then rely upon the materially false information in evaluating the progress of the business and in making decisions about future funding of CoolerSmart's business operations.

10. It was further part of the scheme and artifice to defraud that members of Elkay's management team and its Board of Directors did, in fact, rely upon the materially false information provided by LEVINSON directly or at his direction when making their funding decisions.

11. It was further part of the scheme and artifice to defraud that, in reliance upon the materially false information concerning CoolerSmart's business operations, Elkay's Board of

Directors voted and resolved to approve additional loan funding to WaterWorld, for the purpose of funding CoolerSmart's operations, in the following amounts on the following dates:

6/28/2000     Elkay Board Meeting     Resolution approving an additional $1,000,000

3/19/2001     Elkay Board Meeting     Resolution approving an additional $1,000,000

6/25-26/2001 Elkay Board Meeting     Resolution approving an additional $3,000,000

6/25-26/2002 Elkay Board Meeting     Resolution approving an additional $1,250,000

    12.    It was further part of the scheme and artifice to defraud that the funds which were appropriated to WaterWorld, for the purpose of funding CoolerSmart's operations, were wired to CoolerSmart's corporate bank account at Wilmington Trust Company in Wilmington, Delaware on approximately a monthly basis.

    13.    It was further part of the scheme and artifice to defraud that, of those additional loan funds authorized by Elkay's Board of Directors from June 2000 through June 2002, approximately $6,000,000 had been wired to CoolerSmart's corporate bank account, number xxxxxx07, at Wilmington Trust Company in Wilmington, Delaware by July 31, 2002.

    14.    It was further part of the scheme and artifice to defraud that CoolerSmart's computerized customer database was manipulated in the spring of 2002 to reflect fictitious cooler placements. This action was taken when LEVINSON became concerned that Elkay's management team would discover the fraud. The purpose of this manipulation was to conceal the ongoing fraud.

    15.    It was further part of the scheme and artifice to defraud that certain of the funds allocated to CoolerSmart were used by LEVINSON for his personal benefit, not for legitimate business purposes.

**Manner and Means**

16. The following sequence of events is illustrative of the manner and means by which LEVINSON's scheme and artifice to defraud was executed:

a) On or about May 24, 2001, LEVINSON sent from CoolerSmart's offices in New Castle, Delaware, via levinson@coolersmart.com, an e-mail to P.R., an Elkay employee, at Elkay's Oak Brook, Illinois offices, wherein LEVINSON attached a June 2001 CoolerSmart business plan containing materially false and misleading information regarding CoolerSmart's operations, the content of which e-mail and attachments he did then and there know falsely stated CoolerSmart's business operations, including cooler placements and "quit rate," by inflating the monthly cooler placements to make it appear that CoolerSmart was meeting its business target of placing 300 new coolers per month, which information was sent for use by and in preparation for Elkay's June 2001 Board of Directors Meeting.

b) On or about June 26, 2001, Elkay's Board of Directors discussed and reviewed historical and year-to-date operating and financial information for CoolerSmart, as provided by LEVINSON.

c) On or about June 26, 2001, in reliance upon the information provided by LEVINSON, Elkay's Board of Directors approved allocation of $3,000,000 to WaterWorld "for the sole and limited purpose of advancing [the funds] to CoolerSmart, LLC" for the purpose of expanding CoolerSmart's operations into Baltimore, Maryland.

d) On or about June 27, 2001, B.M., an Elkay employee, requested approval to wire transfer $109,000 for the benefit of CoolerSmart, beneficiary account number XXXXXX07, at Wilmington Trust Company, Wilmington, Delaware.

e) On or about June 27, 2001, P.R., an Elkay employee, approved a wire transfer of $109,000 from Elkay account number XXXX54 for the benefit of CoolerSmart, account number XXXXXX07, at Wilmington Trust Company, Wilmington, Delaware, to be paid on July 2, 2001.

f) On or about July 2, 2001, a wire transfer of $109,000 was received into CoolerSmart's account number XXXXXX07, at Wilmington Trust Company, Wilmington, Delaware.

## COUNT 1

17. Paragraphs 1 through 16 are incorporated herein by reference.

18. On or about July 2, 2001, in the State and District of Delaware and elsewhere, including Illinois, ADAM J. LEVINSON, defendant herein, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations and promises, and for the purposes of executing such scheme and artifice and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce a wire transfer, to wit, LEVINSON caused to be sent by wire $109,000 from Elkay account number XXXX54 for the benefit of CoolerSmart, account number XXXXXX07, at Wilmington Trust Company, Wilmington, Delaware, in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 2

19. Paragraphs 1 through 16 are incorporated herein by reference.

20. On or about March 11, 2001, in the State and District of Delaware, ADAM J. LEVINSON, defendant herein, a resident of New Castle County, Delaware, did willfully make and subscribe an Individual Federal Income Tax Return, Form 1040, for the year 2000 which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the Internal Revenue Service, which said Form 1040 he did not believe to be true and correct as to

every material matter, in that the said Form 1040 stated that his line 7 W-2 income was $97,500 whereas, as he then and there well knew and believed, his line 7 W-2 income was approximately $127,554, in violation of Title 26, United States Code, Section 7206(1).

### COUNT 3

21.   On or about April 14, 2002, in the State and District of Delaware, ADAM J. LEVINSON, defendant herein, a resident of New Castle County, Delaware, did willfully make and subscribe an Individual Federal Income Tax Return, Form 1040, for the year 2001 which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the Internal Revenue Service, which said Form 1040 he did not believe to be true and correct as to every material matter, in that the said Form 1040 stated that his line 7 W-2 income was $142,096 whereas, as he then and there well knew and believed, his line 7 W-2 income was approximately $219,652, in violation of Title 26, United States Code, Section 7206(1).

### COUNT 4

22.   On or about April 15, 2003, in the State and District of Delaware, ADAM J. LEVINSON, defendant herein, a resident of New Castle County, Delaware, did willfully make and subscribe an Individual Federal Income Tax Return, Form 1040, for the year 2002 which was verified by a written declaration that it was made under the penalties of perjury, and was filed with the Internal Revenue Service, which said Form 1040 he did not believe to be true and correct as to every material matter, in that the said Form 1040 stated that his Taxable Income was $85,156 whereas, as he then and there well knew and believed, his Taxable Income was substantially in

excess of $85,156, in violation of Title 26, United States Code, Section 7206(1).

A TRUE BILL

_____
Grand Jury Foreman

COLM F. CONNOLLY
UNITED STATES ATTORNEY

By: _____
Shannon Thee Hanson
Assistant U.S. Attorney

Dated: June 6, 2006